# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2024-1695
_____

RODOLFO BAILETTI and ANA
L. SAEZ,

    Appellants,

    v.

UNIVERSAL PROPERTY AND
CASUALTY INSURANCE COMPANY,

    Appellee.

_____

On appeal from the Circuit Court for Escambia County.
R. Todd Harris, Judge.

October 8, 2025

PER CURIAM.

Appellants challenge the final judgment entered for Universal Property and Casualty Insurance Co. that awarded Appellants nothing for their breach of contract claim. Appellants contend that the trial court denying their motion for directed verdict and then allowing the jury to determine whether Universal breached the contract was contrary to uncontroverted trial testimony that Universal failed to comply with its contractual duties. Our review of the record, including the trial transcript, shows that there was testimony to support the jury's verdict that Universal did not breach the contract. Accordingly, we affirm.

Hurricane Sally hit Appellants' residence in Pensacola in September 2020. Wind-driven rain intruded into the home through the roof and windows, causing damage to those components and several interior areas. Appellants hired a public adjuster who reported Appellants' claim to Universal about a month after the hurricane hit. Universal sent its field adjuster to inspect the property about two months after the hurricane. Universal's field adjuster submitted her report and estimate to Universal for processing the claim. No adjuster testified at trial for Appellants, and the report by Appellants' public adjuster was not admitted into evidence. But Universal's corporate representative acknowledged that the estimate by Appellants' public adjuster was more than $100,000.00 higher than the damage estimate by Universal's field adjuster. The date Appellants' public adjuster submitted his estimate was not established at trial.

Universal agreed that Appellants' property was covered by their homeowner's policy. Universal sent Appellants a letter in February 2021 accompanied by a payment of $8,125.20. The letter explained that based on Universal's field adjuster's estimate, the repair or replacement costs for the dwelling and shed totaled $18,185.93 plus $2,349.80 equaling $20,535.73. From this total, Universal subtracted recoverable depreciation of $6,145.81, non-recoverable depreciation of $256.72, and the wind deductible for the dwelling of $6,008.00. This resulted in the $8,125.20 net payment to Appellants. The same letter from Universal instructed Appellants that they could recover the $6,145.81 in depreciation by submitting invoices, signed contracts, photos, certificates of completion, or other evidence that "the repairs were performed and expenses incurred."

On June 18, 2021, four months after Universal paid Appellants $8,125.20, Appellants filed their breach of contract action. Appellants' amended complaint did not specify a paragraph or provision of the insurance policy they alleged Universal breached. They alleged that Universal knew that Appellants' repair and replacement costs were far greater than Universal's adjuster estimated and that the company breached the policy by failing "to provide full payment for the Loss" to Appellants' property. When the complaint was filed, Appellants

had not made any major repairs from hurricane damage. The HVAC system was replaced sometime later in 2021, and the roof was replaced more than two years later, in December 2023.

The policy attached to the amended complaint included Homeowners 3 – Special Form, Section I – Conditions, Paragraph D.2.d. of the Policy, "Loss Settlement." This paragraph provided:

> d.  We will initially pay at least the actual cash value of the insured loss, less any applicable deductible. We will then pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred, subject to [a percentage formula using replacement cost not at issue].

At trial in 2024, testimony by Universal's corporate representative and by both Appellants established that Appellants provided Universal no receipts or other documentation of expenses incurred for protection of the home, such as tarps for the roof and rented dehumidifiers. And it was undisputed that as of the date the lawsuit was filed, Universal had not received any documentation for expenses incurred by Appellants for repairs they, their family members, or any third parties made to the home. Universal's corporate representative did not concede any breach of the insurance contract by the company.

At trial, Appellants presented the estimate of engineer and general contractor Alfredo Brizuela for his evaluation of the damage to Appellants' property. This estimate was based on Mr. Brizuela's inspection of the property in March 2023, two years after Appellants filed their breach of contract action and more than two years after the hurricane. This estimate was not provided to Universal until the eve of trial. Mr. Brizuela did not calculate a total estimate but prepared a room-by-room evaluation.

Universal presented its own construction expert, Jonathan Pruitt, to testify about his inspection of the property in April 2024 and his report of the actual cost value of Appellants' loss from the hurricane four years earlier. Over the course of the four-day trial, Mr. Pruitt refined his estimate based on information he received during trial. He ultimately estimated the actual cost value at $31,637 but clarified that his value did not account for any

deductible or prior payments made by Universal. Mr. Pruitt gave his opinion that Universal's field adjuster's 2020 estimate of the repair/replacement cost for the roof "wasn't enough" and was "probably deficient." But Mr. Pruitt gave no opinion on whether Universal's reliance on that estimate was a breach of the insurance policy. Any such opinion would have been beyond his expertise and qualifications.

Both parties moved for a directed verdict. Universal argued that on the date Appellants filed their lawsuit, there was no evidence that Universal's payment breached any provision of the insurance contract. The only estimates at that time were Universal's field adjuster's estimate, on which the company paid $8,125.20, and Appellants' public adjuster's higher estimate not in evidence at trial. Appellants countered that they were entitled to a directed verdict based on the later-created estimates of the actual cash value by Mr. Brizuela and Mr. Pruitt. There was no question that these actual cash value estimates did not exist in 2021, when Universal made its payment and when Appellants filed their breach of contract action.

The trial court denied both motions for a directed verdict,[*] finding that whether Universal breached the insurance contract by paying only on the actual cash value as estimated by its field adjuster, and absent any documentation of repair expenses from Appellants, was a question for the jury. The jury then found that Appellants did not prove that Universal had breached the contract and so the jury did not address the measure of damages from any breach.

"[G]ranting a motion for directed verdict is proper only if there is no evidence upon which a jury could find against the party for whom the verdict is directed. *Ferguson v. Universal Prop. & Cas. Ins. Co.*, 46 So. 3d 1037, 1038 (Fla. 1st DCA 2010). This issue is reviewable de novo." *Samiian v. Johnson*, 302 So. 3d 966, 984 (Fla. 1st DCA 2020). Contrary to Appellants' argument on appeal, Universal's corporate representative did not testify that the company breached the insurance policy or concede that the

---

[*] Of course, as the prevailing party at trial, Universal does not challenge the denial of its motion for directed verdict on appeal.

4

payment to Appellants was a breach of any provision of the contract.

The "Loss Settlement" paragraph in Appellants' homeowner's policy quoted above comports with section 627.7011(3)(a), Florida Statutes. We recently considered a similar provision in *Homeowners Choice Property and Casualty Insurance Co. v. Clark*, 410 So. 3d 99 (Fla. 1st DCA 2025). There, the trial court denied the insurer's motion for a directed verdict, and the trial court entered final judgment for the plaintiffs upon the jury's verdict. *Id.* at 103. But we reversed due to a lack of evidence to support the insureds' breach of contract claim. *Id.* at 112.

Describing the burden of proof to show a breach of the insurer's duty to pay the actual cash value, we explained:

> Section 627.7011(3)(a) places the initial burden on the insurer to show that it paid "at least the actual cash value of the insured loss." But once the insurer provides an ACV estimate and pays that estimate sum, the burden shifts to the insured to demonstrate that the payment did not reflect the fully insured loss. A disagreement between the parties as to the scope and extent of the damage is resolved by a factfinder. *See cf.* [*Citizens Prop. Ins. Corp. v.*] *Salazar*, 388 So. 3d [115] at 118 [(Fla. 3d DCA 2023)] (discussing how a directed verdict should be granted when an insured fails to satisfy his burden to show the insurer did not pay sufficient ACV for a covered loss).

> But when—as here—no evidence can support a disagreement as to ACV, a factfinder cannot conclude which of the two amounts is correct. Just as the courts found in *Salazar* and *Universal Prop. & Cas. Ins. Co. v. Qureshi*, 396 So. 3d 564, 566–67 (Fla. 4th DCA 2024), we too conclude that when (1) an insured's estimate and evidence provides only for RCV costs and (2) no evidence is presented to challenge the insurer's ACV payout, no breach of contract occurs when the insurer fails to pay monies under the insured's estimate. *See Salazar*, 388 So. 3d at 118 ("Here, the homeowner did not produce any evidence to establish her damages exceeded Citizens'

5

initial payment. Thus, Citizens was *not yet obligated to pay any additional amount or matching costs*." (emphasis supplied)).

*Homeowners Choice*, 410 So. 3d at 111–12.

Here, Universal showed at trial that it paid Appellants based on the estimate for actual cash value submitted by Universal's field adjuster. Appellants presented expert testimony at trial that the payment did not reflect the fully insured loss. But the estimates presented during trial were prepared years after the hurricane, years after the lawsuit was filed, and were provided to the insurer only on the eve of, and in Mr. Pruitt's case, during, the trial. Appellants failed to show that as of June 2021, when they filed their breach of contract action, Universal had breached the insurance policy. Appellants never sought to amend their complaint to encompass any alleged breach occurring after June 2021. "Damages are assessed at the time of the breach rather than at the time of the trial." *Jeremy Stewart Constr. v. Matthews*, 324 So. 3d 41, 42 (Fla. 1st DCA 2021) (citations omitted).

We find no error in the trial court's denial of Appellants' motion for a directed verdict on whether Universal breached its contractual duty under the insurance policy by making the initial payment based on its field adjuster's estimate. And we affirm the final judgment based on the jury's finding that Appellants failed to prove Universal's payment was a breach of the contract because the record, including the testimony of the corporate representative and both Appellants, supports the jury's verdict.

AFFIRMED.

BILBREY, KELSEY, and NORDBY, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

6

Michael A. Cassel of Cassel & Cassel, P.A., Hollywood, for Appellants.

Paulo R. Lima of Russo Lima Appellate Firm, P.A., Miami, for Appellee.